IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | |
|---|---|
| MARIO MORALES, MARISSA TINDALE, and ANGELA SMITH,<br><br>Plaintiffs,<br><br>v.<br><br>GLYNN COUNTY, GEORGIA, SAMMY TOSTENSEN, CAP FENDIG, WAYNE NEAL, BILL BRUNSON, ALLEN BOOKER, DAVID O'QUINN, WALTER RAFOLSKI, and ALAN OURS,<br><br>Defendants. | Civil Action<br>File No. \_\_2:22cv024_____ |

# COMPLAINT

This is an action for race/color and gender discrimination pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, as well as 42 U.S.C. §1983 and the Fourteenth Amendment to the U.S. Constitution. Glynn County, working through the Glynn County Commissioners and County Manager (Defendants here) unlawfully discriminated against Plaintiffs Mario Morales (a Latino non-Black male), Marissa Tindale (a Latina non-Black female), and Angela Smith (a Black female) by refusing to even interview them for the position of Chief of Police for the Glynn County Police Department.  Defendants

1

simply decided that, given the political environment on the ground, they would only hire a Black male for the position and would not meaningfully consider candidates who were not Black males.

While Plaintiffs recognize that there were political realities on the ground in Brunswick after the killing of Ahmaud Arbery, and while Plaintiffs surely favor the inclusion of people of color in important governmental roles, the County cannot simply decide that a position must be filled by a person of a particular race/color and gender and refuse to even consider qualified applicants of different races/colors and/or genders in hiring decisions.  Political expediency is not a justification for outright discrimination.

### Parties, Jurisdiction, and Venue

1. Plaintiff Mario Morales is a natural person and citizen of the United States of America, residing in Georgia, and is of full age.

2. Marissa Tindale is a natural person and citizen of the United States of America, residing in Georgia, and is of full age.

3. Angela Smith is a natural person and citizen of the United States of America, residing in Georgia, and is of full age.

4. Defendant Glynn County, Georgia ("Glynn County" or simply the "County") is a body politic and corporate in law, acting under color of law,

and is subject to the jurisdiction of this Court. The County may be served with this complaint by personal service upon Defendant David O'Quinn, the Chairman of the Glynn County Board of Commissioners, or his designee, at his place of employment located at 1725 Reynolds Street, Suite 302, Brunswick, GA 31520.

5. Defendant Sammy Tostensen is an individual who was, at all times relevant to the allegations in this complaint, a Glynn County Commissioner, acting under color of law. The Glynn County Commissioners were responsible for and had final policymaking authority over hiring for the position of Chief of Police of Glynn County. Defendant Tostensen is subject to the jurisdiction of the Court and may be served by personal service at his place of business located at 1725 Reynolds Street, Suite 302, Brunswick, GA 31520.

6. Defendant Cap Fendig is an individual who was, at all times relevant to the allegations in this complaint, a Glynn County Commissioner, acting under color of law. The Glynn County Commissioners were responsible for and had final policymaking authority over hiring for the position of Chief of Police of Glynn County. Defendant Fendig is subject to the jurisdiction of the Court and may be served by personal service at his place of business located at 1725 Reynolds Street, Suite 302, Brunswick, GA 31520.

7. Defendant Wayne Neal is an individual who was, at all times relevant to the allegations in this complaint, a Glynn County Commissioner, acting under color of law.  The Glynn County Commissioners were responsible for and had final policymaking authority over hiring for the position of Chief of Police of Glynn County.  Defendant Neal is subject to the jurisdiction of the Court and may be served by personal service at his place of business located at 1725 Reynolds Street, Suite 302, Brunswick, GA 31520.

8. Defendant Bill Brunson is an individual who was, at all times relevant to the allegations in this complaint, a Glynn County Commissioner, acting under color of law.  The Glynn County Commissioners were responsible for and had final policymaking authority over hiring for the position of Chief of Police of Glynn County.  Defendant Brunson is subject to the jurisdiction of the Court and may be served by personal service at his place of business located at 1725 Reynolds Street, Suite 302, Brunswick, GA 31520.

9. Defendant Allen Booker is an individual who was, at all times relevant to the allegations in this complaint, a Glynn County Commissioner, acting under color of law.  The Glynn County Commissioners were responsible for and had final policymaking authority over hiring for the position of Chief of Police of Glynn County.  Defendant Booker is subject to the jurisdiction of

the Court and may be served by personal service at his place of business located at 1725 Reynolds Street, Suite 302, Brunswick, GA 31520.

10. Defendant David O'Quinn is an individual who was, at all times relevant to the allegations in this complaint, a Glynn County Commissioner, acting under color of law.  The Glynn County Commissioners were responsible for and had final policymaking authority over hiring for the position of Chief of Police of Glynn County.  Defendant O'Quinn is subject to the jurisdiction of the Court and may be served by personal service at his place of business located at 1725 Reynolds Street, Suite 302, Brunswick, GA 31520.

11. Defendant Walter Rafolski is an individual who was, at all times relevant to the allegations in this complaint, a Glynn County Commissioner, acting under color of law.  The Glynn County Commissioners were responsible for and had final policymaking authority over hiring for the position of Chief of Police of Glynn County.  Defendant Rafolski is subject to the jurisdiction of the Court and may be served by personal service at his place of business located at 1725 Reynolds Street, Suite 302, Brunswick, GA 31520.

12. Defendant Alan Ours is an individual who was, at all times relevant to the allegations in this complaint, the Glynn County Manager, acting under color of law.  The Glynn County Manager was involved in and was responsible

for and had final policymaking authority over hiring for the position of Chief of Police of Glynn County. Defendant Ours is no longer the Glynn County Manager; he is now the Lumpkin County Manager. Defendant Ours is subject to the jurisdiction of the Court and may be served by personal service at his place of business located at 99 Courthouse Hill, Suite H, Dahlonega, GA 30533.

13. This action is brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, as well as 42 U.S.C. §1983 and the Fourteenth Amendment to the U.S. Constitution.

14. All the parties herein are subject to the personal jurisdiction of this Court.

15. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b) and L.R. 2.1(a), SDGa because a Defendant resides within the district and divisional boundaries of the Brunswick Division of the Southern District of Georgia.

## Facts

16. Plaintiff Mario Morales is a Latino non-Black male.

17. Plaintiff Marissa Tindale is a Latina non-Black female.

18. Plaintiff Angela Smith is a Black female.

19. Defendants Tostensen, Fendig, Neal, Brunson, Booker, O'Quinn, and Rafolski made up the Glynn County Board of Commissioners in 2021. The

Glynn County (the "County") Board of Commissioners (the "BOC") made the final decision regarding the hiring for the position of Glynn County Chief of Police, along with County Manager Alan Ours.

20. On or about February 28, 2020, then-Glynn County Chief of Police John Powell and three officers were indicted on charges that they ignored an officer consorting with a drug dealer.

21. Powell was replaced as Glynn County Chief of Police by Jay Wiggins, who later announced his retirement on or about January 8, 2021.

22. On January 21, 2021, after Wiggins announced his retirement, a BOC meeting was held, and the members discussed the selection of a new Chief of Police.

23. During this meeting, Defendant Booker made the statement that to "choose somebody other than something that the Black community would be comfortable with, I think it's the wrong way to go."

24. Defendant Booker believed and communicated that the County should only consider hiring a Black Chief of Police.

25. The BOC and Defendant Ours involved the Georgia Association of Chiefs of Police (GACP) and the National Organization of Black Law Enforcement Executives (NOBLE) in the selection process.

26. In February of 2021, the three Plaintiffs submitted applications for the position of Chief of Police prior to the application deadline of March 1, 2021.

27. On or about February 17, 2021, Plaintiff Marissa Tindale applied for the position of Chief of Police.

28. Plaintiff Marissa Tindale provided her race/color and gender during the application. Plaintiff Tindale is a Latina non-Black female.

29. Plaintiff Tindale has impeccable credentials and was well-qualified for the Chief of Police position. Plaintiff Tindale was a former Captain with the Glynn County Police Department and was in the top 3 to be considered for the same position when it was previously announced.

30. On or about February 22, 2021, Plaintiff Angela Smith applied for the position of Chief of Police.

31. Plaintiff Angela Smith provided her race/color and gender during the application. Plaintiff Smith is a Black female.

32. Plaintiff Smith has impeccable credentials and was well-qualified for the position of Chief of Police. Plaintiff Smith was a Police Captain and Investigative Commander with the Brunswick Police Department, where she worked since 2005.

33. On or about February 25, 2021, Plaintiff Mario Morales applied for the position of chief of police.

34. Plaintiff Morales provided his race/color and gender during the application. Plaintiff Morales is a Latino non-Black male.

35. Plaintiff Morales has impeccable credentials and was well-qualified for the position of Chief of Police. Plaintiff Morales was a Regional Director for the Federal Protective Service (the uniformed security police division of the U.S. Department of Homeland Security) for an eight-state region.

36. The applications of all three Plaintiffs, along with dozens of other applications, were presented to the BOC.

37. Despite having ample qualified applicants, the BOC met on March 5, 2021, and decided to extend the application period by two weeks.

38. On information and belief, this extension occurred to recruit more Black males for the applicant pool.

39. After the extended application period, Defendants narrowed the applicants, which on information and belief was 42 applicants, to seven finalists.

40. The seven finalists were disproportionately comprised of Black males.

41. Jacques Battiste, a Black male, was selected for the Chief of Police position in or around July of 2021.

42. Battiste did not submit his application until the extended application period.

43. Defendants Walter Rafolski and Sammy Tostensen, who are Glynn County Commissioners, have stated that they were being forced to hire a Black police chief.

44. Plaintiffs were at least as qualified for the position, if not more qualified, than Battiste was. Plaintiffs were Peace Officer Standards and Training (POST) qualified, while Battiste was not. In fact, Battiste's swearing in was delayed for approximately five months while Battiste sought POST certification, and Battiste failed the physical examination twice in seeking such certification.

## COUNT I
### (Race/Color and Gender Discrimination in Violation of Title VII)
### (Against Glynn County)

45. Prior to filing this lawsuit, Plaintiffs filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging violations of Title VII by the Defendants.

46. On December 9, 2021, Marissa Tindale and Angela Smith received the EEOC Notice of Right to Sue.

47. On December 15, 2021, Mario Morales received the same notice.

48. All other conditions precedent to the institution of this lawsuit have been fulfilled.

49. In 2020 and 2021, the County was engaged in an industry affecting commerce and had more than fifteen employees for each working day in each of 20 or more calendar weeks.

50. In 2020 and 2021, the County had more than fifteen employees every working day.

51. The County discriminated against Plaintiffs in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000(e) as amended by the Civil Rights Act of 1991 by refusing to meaningfully consider or even interview Plaintiffs for the position of Chief of Police because of race/color and/or gender.

52. When hiring for the position of Chief of Police, the BOC and County Manager, acting on behalf of the County, decided that they would only meaningfully consider Black males for the role and that they would only hire a Black male.  As such, they discriminated against all three Plaintiffs who are not Black males.

53. Plaintiff Mario Morales, a Latino non-Black male, was not meaningfully considered for Chief of Police and was not interviewed because he is not Black.

54. Plaintiff Morales therefore brings a Title VII claim of race and/or color discrimination.

55. Plaintiff Marissa Tindale, a Latina non-Black female, was not meaningfully considered for Chief of Police and was not interviewed because she is neither Black nor male.

56. Plaintiff Tindale therefore brings a Title VII claim of race and/or color discrimination and gender discrimination.

57. Plaintiff Angela Smith, a Black female, was not meaningfully considered for Chief of Police and was not interviewed because she is not male.

58. Plaintiff Smith therefore brings a Title VII claim of gender discrimination.

59. The County violated the law by failing to adequately supervise, control, discipline, and/or otherwise penalize the conduct, acts, and failure to act of its supervisors and agents as described above who engaged in race/color and/or gender discrimination.

60. The County failed to comply with its statutory duty to take all reasonable and necessary steps to eliminate discrimination from the workplace and to prevent it from occurring in the future.

61. As a direct and proximate result of Defendants' willful, knowing and intentional discrimination against Plaintiffs, they have suffered constitutional violations, and loss of earnings and other employment benefits and job opportunities.

62. The outrageous conduct of Defendants described above was done with a conscious disregard of the rights of Plaintiffs. Defendant Glynn County, Georgia, through its Commissioners, County Manager, officers, managing agents and/or supervisors, authorized, condoned, and/or ratified the unlawful conduct.

### COUNT II
**(Race/Color and Gender Discrimination in Violation of Equal Protection)**
**(Against all Defendants)**

63. Defendants' conduct as described herein was accomplished under color of state and local law.

64. Defendants engaged in a pattern and practice of intentional race/color and gender discrimination by refusing to meaningfully consider or even

interview Plaintiffs for the position of Chief of Police because of race/color and/or gender.

65. When hiring for the position of Chief of Police, Defendants decided that they would only meaningfully consider Black males for the role and that they would only hire a Black male.  As such, they discriminated against all three Plaintiffs who are not Black males.

66. Plaintiff Mario Morales, a Latino non-Black male, was not meaningfully considered for Chief of Police and was not interviewed because he is not Black.

67. Plaintiff Morales therefore brings an Equal Protection claim of race and/or color discrimination.

68. Plaintiff Marissa Tindale, a Latina non-Black female, was not meaningfully considered for Chief of Police and was not interviewed because she is neither Black nor male.

69. Plaintiff Tindale therefore brings an Equal Protection claim of race and/or color discrimination and gender discrimination.

70. Plaintiff Angela Smith, a Black female, was not meaningfully considered for Chief of Police and was not interviewed because she is not male.

71. Plaintiff Smith therefore brings an Equal Protection claim of gender discrimination.

72. At the time of the events alleged herein, the law was well-settled that under the Fourteenth Amendment to the United States Constitution a public employer may not discriminate against employees in the terms and conditions of their employment because of race, color, or gender.

73. At the time that the Defendants decided not to meaningfully consider or even interview Plaintiffs because of race/color and gender, each knew that such conduct was a violation of well-established law and of Plaintiffs' Constitutionally protected rights.

74. As a direct and proximate result of Defendants' willful, knowing, and intentional discrimination against Plaintiffs, they have suffered constitutional violations, and loss of earnings and other employment benefits and job opportunities.

75. The outrageous conduct of Defendants described above was done with a conscious disregard of the rights of Plaintiffs. Defendant Glynn County, Georgia, through its Commissioners, County Manager, officers, managing agents and/or supervisors, authorized, condoned and/or ratified the unlawful conduct.

76. The individual defendants – members of the BOC and the County Manager – were final decisionmakers for the County; their individual policy-level actions of discriminating in the hiring of the Chief of Police are therefore attributable to the County.

77. Defendants discriminated against Plaintiffs with malice and reckless indifference to Plaintiffs' federally-protected rights, thereby entitling them to punitive damages.

## Prayer for Relief

WHEREFORE, Plaintiff prays that this Court issue the following relief:

1) That process issue in accordance with the law;

2) That the Court award Plaintiffs compensatory and general damages in an amount to be determined by the jury against Defendants;

3) That the Court award Plaintiffs punitive damages in an amount to be determined by the enlightened conscience of the jury against Defendants;

4) That the Court award injunctive relief, including but not limited to requiring Defendants to adopt race- and gender-neutral hiring practices;

5) That the Court award costs of this action, including attorneys' fees, to Plaintiffs, pursuant to 42 U.S.C. § 1988, Title VII of the Civil Rights Act of 1964, as amended, and other applicable laws regarding such awards;

6) That the Court award Plaintiffs such other and further relief as it deems just and necessary; and

7) That Plaintiffs be granted a trial by jury.

                               This 7th Day of March, 2022

                               /s/ Mark Begnaud
                               Mark Begnaud
                               Georgia Bar No. 217641
                               mbegnaud@eshmanbegnaud.com
                               Michael J. Eshman
                               Georgia Bar No. 365497
                               meshman@eshmanbegnaud.com

ESHMAN BEGNAUD, LLC
315 W. Ponce De Leon Ave
Suite 775
Decatur, GA 30030
404.665.9601

                               /s/ Jason Randall Clark
                               Jason Randall Clark
                               Georgia Bar No. 127181
                               jason@jasonclarkpc.com

Jason Clark, P.C.
2225 Gloucester Street
Brunswick, GA 31520
912-264-1999